**PUBLISHED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **EDWARD N. BELL**, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:04CV00752 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WILLIAM PAGE TRUE, WARDEN,** | ) | By: James P. Jones |
| **SUSSEX I STATE PRISON,** | ) | Chief United States District Judge |
| | ) | |
| Respondent. | ) | |

*Jonathan P. Sheldon, Arlington, Virginia, and James G. Connell, III, Devine & Connell, P.L.C., Fairfax, Virginia, for Petitioner; Katherine P. Baldwin, Senior Assistant Attorney General of Virginia, Richmond, Virginia, for Respondent.*

Edward N. Bell is a state prisoner under capital sentence for murder who has given notice that he intends to file a petition for a writ of habeas corpus in this court. His conviction and sentence were affirmed on direct appeal by the Virginia Supreme Court, *Bell v. Commonwealth*, 563 S.E.2d 695 (Va. 2002), *cert. denied*, 537 U.S. 1123 (2003), and his state post-conviction efforts have been unsuccessful. I stayed Bell's execution and have appointed him counsel and allowed him to proceed in forma pauperis. I denied without prejudice the petitioner's prior application for investigative and expert assistance on the ground that it was improperly filed ex parte.

I also denied the state's request that Bell be required to file his habeas petition within thirty days, and I instead granted him ninety days.

Now before me are Bell's resubmitted motion for the appointment of a mitigation specialist and an investigator, and his motion for reconsideration as to the filing date or, in the alternative, for an extension of time. The parties have briefed both issues and presented oral argument as to the request for expert services, and Bell has supplemented his application for expert services. The motions are now ripe for decision.

Because I find that Bell has failed to establish that the assistance of these experts is reasonably necessary, I will deny his motion for expert services. For the reasons stated in my previous order, I deny the petitioner's motion for reconsideration and request for a discretionary extension as to the petition filing deadline.


I

Bell requests the appointment of a mitigation specialist and a fact investigator to assist him in the preparation of his petition for a writ of habeas corpus. He argues that the appointment of such experts is reasonably necessary for his representation.

The law entitles capital defendants to qualified legal representation in any post conviction proceeding under § 2254 of the federal habeas corpus statute. *See* 21

- 2 -

U.S.C.A. § 848(q)(4)(B) (West 1999); *McFarland v. Scott*, 512 U.S. 849, 856-57 (1994). This right to counsel, which attaches prior to the filing of the habeas petition, also entitles capital defendants to a variety of expert and investigative services upon a showing of reasonable necessity. *Id*. at 855. The statute provides that

> [u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses thereof. . . .

21 U.S.C.A. § 848(q)(9) (West 1999).

The statute does not define or otherwise provide guidance as to what constitutes "reasonable necessity." However, courts have held that the services of an expert are reasonably necessary "'when a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance.'" *Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir. 1998) (quoting *Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir. 1980)). Expert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the

- 3 -

expert's findings. *See Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir. 1993); *Weeks v. Angelone*, 4 F. Supp. 2d 497, 519 (E.D. Va. 1998) (citations omitted).

A

Bell, a Jamaican national, requests the services of a "mitigation specialist" to develop evidence in support of his claim that he is mentally retarded. The specialist would travel to Jamaica for approximately two weeks to collect institutional records and interview Bell's teachers, family, and friends. Specifically, Bell seeks the appointment of "a social worker with extensive experience in death penalty mitigation investigations and with Jamaicans." (Pet'r Mot. for Appointment of Experts at 25.) For the following reasons, I find that a mitigation specialist is not reasonably necessary for Bell's representation.

The procedural history of this issue is as follows. Bell had access to a competent psychologist during the state criminal prosecution. The state trial court appointed psychologist Dr. Stejskal, who evaluated Bell. Defense counsel did not submit the results of that testing at trial.

In his state habeas petition, Bell requested an evidentiary hearing as to his mental retardation and claimed that he had been denied the effective assistance of counsel because defense counsel failed to recognize or raise the issue of Bell's mental

- 4 -

retardation and resulting ineligibility for a death sentence. The Supreme Court of Virginia made specific findings rejecting Bell's mental retardation claims:

> The Court denies petitioner's request because his claim of mental retardation is "frivolous." Code § 8.01-654.2. Petitioner fails to present any evidence that he has performed at least two standard deviations below the mean on an IQ test. Thus, he has failed to demonstrate that he has significantly subaverage intellectual functioning. Code § 19.2-264.3:1.1(A)(i). Furthermore . . . petitioner fails to demonstrate that he has significant limitations in adaptive behavior. See Code § 19.2-264.3:1(A)(ii).

(Va. Habeas Op. at 4-5.)

The state court's determination of factual issues "shall be presumed to be correct." 28 U.S.C.A. § 2254(e)(1) (West Supp. 2004). This presumption applies equally to the factual findings of state courts that conducted postconviction proceedings. *Howard v. Moore*, 131 F.3d 399, 422 (4th Cir. 1997) (citing *Rushen v. Spain*, 464 U.S. 114 (1983) (per curiam); *Johnson v. Maryland*, 915 F.2d 892, 896 (4th Cir. 1990)). The presumption of correctness is rebutted, and a state court adjudication is considered to have been "based on [an] unreasonable determination of the facts in light of the evidence presented in the state court proceeding," only upon a showing of clear and convincing evidence to the contrary. § 2254(e)(1); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

- 5 -

The Supreme Court of Virginia made two factual determinations as to Bell's mental retardation claim—first, that Bell failed to demonstrate that he performed at least two standard deviations below the mean on an IQ test; and second, that he failed to demonstrate that he has significant limitations in adaptive behavior. Even if the requested mitigation specialist fulfilled Bell's expectations, Bell still would not be able to rebut the presumption of correctness to which the state court determination is entitled. According to his own evidence—an affidavit from a psychologist who reviewed Virginia's definition of mental retardation—the mitigation specialist's investigation is relevant only to the question whether an individual has deficits in adaptive behavior. (*See* Garnett Aff. ¶ 2-4.)[1] The evidence from Jamaica may

_____

[1] In his affidavit, the psychologist stated that

> 2) I have reviewed the definition of mental retardation in Virginia. . . .
>
> 3) The determination of an individual's intellectual ability is determined by the individual administration of a comprehensive test of intellectual abilities. Findings of a significant deficit in intellectual abilities fulfills the first requirements needed for a diagnosis.
>
> 4) The second element in the determination of mental retardation is establishing deficits in adaptive behavior. This is accomplished by the extensive review and documentation of social history, including . . . the comprehensive and focused collection of social history information from informants familiar with the individual's childhood and developmental period. In addition, it is critical to review records that document adaptive

- 6 -

demonstrate that Bell has limitations in adaptive behavior, but it still would not establish that he has significantly subaverage intellectual functioning. Therefore, the requested mitigation investigation would be futile. *See Clark v. Johnson*, 202 F.3d 760, 768-69 (5th Cir. 2000) (affirming denial of expert assistance where expected findings would not be sufficient to overcome the presumption of correctness). The services of a mitigation specialist are not reasonably necessary at this time.

Alternatively, Bell argues that sending a mitigation specialist to Jamaica is reasonably necessary to collect information in support of his claim that trial counsel were ineffective for failing to request that a mitigation specialist be sent to Jamaica. The Supreme Court of Virginia rejected Bell's claim that counsel were ineffective for "fail[ing] to recognize or raise the issue of petitioner's mental retardation and . . . fail[ing] to develop and present evidence of petitioner's alleged mental retardation in mitigation." (Va. Habeas Op. at 5.) The court held that Bell failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), which established the standard for ineffective assistance of counsel claims. (*Id*. at 5.) As to the

---

behavior development or lack thereof. A Mitigation Specialist is crucial because such a professional is trained and experienced in developing a clear and objective social history. Their consultation is extremely important in working with the Mental Retardation Expert to develop the rationale for a diagnosis.

(Garnett Aff. ¶ 2-4).

"performance" prong, the court held that counsel were not ineffective for failing to assert "a baseless argument." (*Id*.)  As to the "prejudice" prong, the court held that Bell had failed to demonstrate that there was a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. (*Id*.)

The Supreme Court of Virginia's ruling as to Bell's ineffective assistance of counsel claim was based on its factual finding that Bell "is not mentally retarded." (*Id*.)  As previously explained, a petitioner must present clear and convincing evidence to the contrary to rebut the presumption that the state court's factual findings are correct, and Bell has failed to establish that a mitigation specialist could develop such clear and convincing evidence.  Because I must accept the state court's determination that Bell is not mentally retarded, Bell would not be able to win his ineffective assistance of counsel claim on the merits for the same reasons articulated by the state court.  Accordingly, the request for a mitigation specialist is also denied under Bell's alternate argument.

B

Bell also requests the services of a fact investigator to develop evidence in support of his claims that trial counsel's performance was ineffective, that the Commonwealth failed to disclose evidence favorable to him, and that the prosecutor failed to correct testimony he knew to be false.  Specifically, Bell wishes to obtain

- 8 -

evidence that the testimony of various trial and other witnesses was not credible, trace the chain of ownership of the murder weapon, and perform additional DNA testing on that weapon. For the following reasons, I find that a fact investigator is not reasonably necessary for Bell's representation.

Section 848(q) entitles indigent petitioners to reasonably necessary investigative services, but does not authorize federal habeas "retrials." *See Williams v. Taylor*, 529 U.S. 362, 386 (2000) (Stevens, J.) (explaining the purposes of the Anti-Terrorism and Effective Death Penalty Act of 1996). Accordingly, funds are not available under the statute for "fishing expeditions" or to investigate "speculative" claims "founded on mere suspicion and surmise." *Patrick v. Johnson*, 48 F. Supp. 2d 645, 647 (N.D. Tex. 1999); *DeLong v. Thompson*, 790 F. Supp. 594, 617 (E.D. Va. 1991).

The majority of the work for which Bell requests a fact investigator relates to his claims that trial and other witnesses, including police officers and prosecutors, had a motive to lie or were otherwise not credible. Bell has already secured substantial evidence about these alleged credibility issues, including affidavits, direct interviews, and interviews with witnesses' families and friends. In fact, Bell's current attorney conducted most of the prior interviews himself, having served as an investigator for Bell's state habeas appeal for nearly two years. Bell now wants to

- 9 -

re-interview witnesses, including some who have already refused to sign affidavits; interview witnesses whose coworkers, family, and friends he has already interviewed; interview witnesses to find out whether the Commonwealth ever interviewed them; and conduct a broad search for potential witnesses to confirm his belief that some of the trial witnesses were not credible.

Bell's written motion merely emphasizes his contentions that the state's witnesses cannot be trusted, and that new witnesses may exist who could verify his theories. Bell has not presented any facts to explain how additional investigation could now confirm his allegations, when prior investigation failed to do so. Bell hopes that if he talks to enough witnesses, he will stumble upon some new evidence to support his claims. The requested services would be duplicative and amount to a "fishing expedition." Moreover, predictions of uncalled witnesses' testimony are "largely speculative." *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986) (citations omitted). For these reasons, the requested services are not reasonably necessary at this time.

Bell also requests an investigator to trace the origin of the murder weapon and reassess the DNA evidence. At trial, no evidence as to the origin or ownership of the gun was presented. The Commonwealth did present evidence that a mix of three

individuals' DNA was found on the gun, but could neither confirm nor exclude Bell as a contributor of DNA.

Bell now wants to investigate every pawn shop in Winchester to see whether any ever handled the murder weapon. A stolen gun report from a separate case has prompted him to also request information on all items, not just guns, stolen from the Winchester Police Department in October 1999. Finally, Bell requests information about all individuals whose DNA was compared against the sample found on the gun.

Bell has failed to demonstrate any particularized need to trace the weapon, or suggest how the results of such an investigation could enable him to win on the merits of his claim. Nor has he shown how additional DNA evidence could assist his claim. Neither investigation would exclude Bell as the perpetrator. Moreover, other evidence supported Bell's conviction—gunshot residue was found on Bell's hands, he was discovered hiding in the basement of a home near the murder scene, and the gun was found at that residence. *Bell*, 563 S.E.2d at 702. Even if the proposed fact investigator fulfilled Bell's expectations, Bell still would not be able to prevail on the merits of his claim. Therefore, the requested services are not reasonably necessary at this time.

- 11 -

Bell requests that I reconsider my denial of the Warden's motion requesting that Bell be required to file his petition within thirty days, and my previous order that Bell file his petition within ninety days. Bell argues that he is entitled to the entire year permitted under the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations, or until August 11, 2005. In the alternative, he requests a discretionary extension of time until August 11, 2005.

Bell argues that this court erred in its analysis and application of the AEDPA's statute of limitations, but cites no precedent that specifically contradicts this court's decision. Instead, Bell argues that the rationale underlying previously decided cases, Congressional intent, and the fact that this case involves the death penalty "reflect the practical judgment" that this court should reconsider its ruling. For the reasons stated in my previous order, *Bell v. True*, 356 F. Supp. 2d 613 (W.D. Va. 2005), I deny the petitioner's motion for reconsideration.

Bell also contends that this court should reconsider its previous ruling in order to allow the Supreme Court to reach a decision in *Medellin v. Dretke*, which involves the standard of review applicable to habeas petitioners' Vienna Convention claims. Specifically, *Medellin* will answer the question whether the state can invoke procedural default doctrines in response to Vienna Convention claims. *See Medellin*

- 12 -

*v. Dretke*, 371 F.3d 270 (5th Cir. 2004), *cert. granted*, 73 U.S.L.W. 3347 (U.S. Dec. 10, 2004) (No. 04-5928). The state indicates that it does not intend to argue procedural default in Bell's case. Rather, it will argue that the Supreme Court of Virginia considered, and denied, Bell's Vienna Convention claim on the merits. (Warden's Opp. Mot. Reconsideration at 4 n.3.) Even if the state did argue procedural default, the effect, if any, of the *Medellin* decision on Bell's case can be determined after the filing of the state's answer to the petition.

Finally, Bell asks this court to exercise its discretion and grant him an extension until August 11, 2005 to file his petition. In support of this request, Bell reiterates his arguments in favor of a mandatory extension: that the cited case law establishes that this court should grant him an extension, that preliminary investigations demonstrate that more time is needed to explore and develop the factual issues underlying his petition, and that the court would benefit by waiting for the Supreme Court to issue its decision in *Medellin*. These arguments fail to state an adequate reason for a discretionary extension of time until August 11, 2005. Therefore, for the reasons stated in my first opinion and order on this issue, and those previously stated in this opinion, I deny Bell's request. Bell must file his petition for habeas corpus according to the conditions set forth in my previous order.

III

For the foregoing reasons, it is **ORDERED** as follows:

1.     The petitioner's motion for the appointment of a mitigation specialist

       and an investigator is denied; and

2.     The petitioner's motion for reconsideration or an extension of time is

       denied.

                          ENTER: April 29, 2005

                          /s/ JAMES P. JONES
                          Chief United States District Judge

Case 7:04-cv-00752-JPJ   Document 42   Filed 04/29/05   Page 14 of 14   Pageid#: 228